**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

DAMON MCDOWELL,

                 Plaintiff,

v.                               CIVIL ACTION NO.   5:12-cv-01340

TOWN OF SOPHIA, et al.,

                 Defendants.


**MEMORANDUM OPINION AND ORDER**


The Court has reviewed *Defendants Timothy Capehart, Frank Priddy, John Doe Officers #1 and #2 and Jane Doe Officer's Motion to Dismiss* (Document 10) and supporting memorandum (Document 11).   After careful review of Plaintiff's Complaint (Document 1), Response (Documents 14 & 17)[1] and Surreply (Document 18) together with Defendants' Reply (Document 16) and Surresponse (Document 19), the Court grants in part and denies in part the Defendants' motion.

### I.       BACKGROUND

Plaintiff, Damon McDowell, filed a Complaint against Defendants Town of Sophia, Town Council of Sophia, Sophia Police Department, Tomi Sue Peck ("Peck"), Timothy Capehart ("Capehart"), John Doe Officer #1 ("Doe #1"), John Doe Officer #2 ("Doe #2"), Frank Priddy ("Priddy"), and Jane Doe Officer ("Doe #3").   Defendant Peck is the Chief of the Sophia Police Department. (Compl. ¶5.)   Defendants Capehart, Priddy, Doe #1, Doe #2, and Doe #3 are police

---

[1] The Plaintiff mistakenly omitted page 19 of his response (Document 14) and subsequently filed the full response as Document 17. For simplicity, the Court cites to Document 14.

officers with the City of Beckley. (Compl. ¶¶ 6-10.)   The Court collectively refers to Defendants

Capehart, Priddy, Doe #1, Doe #2, and Doe #3 as the "Beckley Defendants."   Defendants Town

of Sophia, Town Council of Sophia, Sophia Police Department, and Peck are collectively referred

to as the "Sophia Defendants."   Plaintiff alleges claims for violations of 42 U.S.C. § 1981 (Count

I), 42 U.S.C. § 1983 (Counts II and III), the West Virginia Human Rights Act (Count IV) and the

West Virginia Wage Payment and Collection Act (Count V).   Counts III and V do not concern the

Beckley Defendants and are not the subject of the pending motion.

Plaintiff is an African American who was formerly employed as a police officer by the

Sophia Defendants. (Compl. ¶¶ 14-15.)   Plaintiff alleges he was the only African American police

officer for the Sophia Defendants when he began his employment in October of 2011. (Compl. ¶

15.)   Plaintiff alleges he was subjected to several instances of racial discrimination, racial

profiling, and other violations of his civil rights during the course of his employment with the

Sophia Police Department. (*See* Compl. ¶¶16-24.)   These allegations are directed at the Sophia

Defendants and Defendant Peck, but do not directly relate to the Beckley Defendants.[2]

Plaintiff asserts claims against the Beckley Defendants based on three encounters with the

Beckley Police Department.   On March 20, 2012, Plaintiff alleges Defendants Capehart and Doe

#1 responded to a domestic dispute between his daughter and her Caucasian boyfriend, Nathan

McGraw ("McGraw"). (Compl. ¶ 25.)   Upon arrival at Plaintiff's home, he alleges Defendants

Capehart and Doe #1 took photos of injuries McGraw inflicted on his daughter and told his wife

that she did not need to give a statement about the incident because they had pictures and were

going to arrest the boyfriend. (*Id.*) Plaintiff alleges that Defendants Capehart and Doe #1 did not

---

[2] Plaintiff alleges he was repeatedly subjected to unwelcome offensive racist jokes and conduct by his coworkers with the knowledge of the Sophia Defendants. (*See* Compl. ¶¶16-17.) Plaintiff also alleges he was subjected to disparate treatment and other racially motivated employment actions by the Sophia Defendants. (*See* Compl. ¶¶ 18-24.)

arrest McGraw for domestic violence or battery, but instead became consumed with a malicious motivation to personally harm Plaintiff. (Compl. ¶ 26.)

Also on March 20, 2012, Plaintiff alleges that upon being taken into custody, McGraw informed Defendants Capehart and Doe #1 that he had consumed alcohol at Applebee's earlier in the day with the Plaintiff. (Compl. ¶ 28.)   After learning this, Plaintiff alleges Defendants Capehart and Doe #1 abandoned investigating the domestic battery and turned their investigation to him. (*Id*.)   Plaintiff claims Defendant Capehart and Doe #1 went to Applebee's to ask questions about McGraw's alcohol consumption. (Comp. ¶ 29.)   Plaintiff alleges McGraw introduced him to his friend who was an employee of Applebee's. (*Id*.)   Plaintiff alleges McGraw's friend told them that whatever they ordered was "on the house." (*Id*.)   Plaintiff alleges he did not order any drinks or food but was offered a free drink by a different waiter. (*Id*.)   Plaintiff alleges he left Applebee's with the understanding his drink had been paid for by the other waiter. (*Id*.)

Prior to this March 20, 2012 incident, Plaintiff alleges Defendants Capehart and Doe #1 pulled him over on a traffic stop and, upon seeing that he was African American, asked him if he had stolen the car. (Compl. ¶ 27.)   Plaintiff alleges that he informed the officers that he and his family were test driving the vehicle.   Defendants Capehart and Doe #1 then asked if he had drugs in the vehicle. (*Id*.)   Plaintiff alleges that immediately thereafter, without probable cause or any indication of unlawful activity, Defendants Capehart and Doe #1 had a K-9 dog sniff the vehicle to see if there were drugs in the car. (*Id*.)   Plaintiff further alleges that Defendants Capehart and Doe #1 immediately fled the scene when they realized he was tape-recording the incident. (*Id*.) Plaintiff alleges he reported this incident to the Beckley Police Department, but no disciplinary actions were taken. (*Id*.)

On March 21, 2012, Plaintiff alleges Defendant Peck confronted him with two statements from Applebee's employees that claimed he and McGraw had not paid for drinks they had been served. (Compl. ¶ 30.) Plaintiff claims Defendant Peck informed him the Beckley Police Department had a warrant for his arrest, but that if he agreed to resign then he would not be arrested by the Beckley Police Department. (*Id.*) Plaintiff alleges he refused to resign and was immediately fired by Defendant Peck. (*Id.*)

After being terminated, Plaintiff alleges he returned to Applebee's to inform the waiter who purchased his drink what had happened. (Compl. ¶ 31.) Plaintiff claims Defendants Capehart and Doe #1 never questioned this waiter. However, Plaintiff alleges the waiter who purchased his drink, upon inquiry, informed a Sophia police officer that he purchased Plaintiff's drink. (*Id.*) Subsequently, Plaintiff alleges Defendants Capehart and Doe #1 returned to Applebee's to speak with the server who paid for Plaintiff's drink and were told by him that he paid for Plaintiff's drink. (Compl. ¶ 33.) As a result, Plaintiff alleges Defendants Capehart and Doe #1 amended the police report to allege Plaintiff walked out without paying for food instead of alcohol.

On March 26, 2012, Plaintiff alleges he was arrested and charged with defrauding an innkeeper in the amount of $18.27 based on the allegations that he had not paid for drinks at Applebee's. (Compl. ¶ 37.) However, Plaintiff alleges no charges were brought against McGraw, a similarly situated white male. (*Id.*) Plaintiff alleges that an Applebee's employee informed him that one of his coworkers talked about how Defendants Capehart and/or Doe # 1 told them what to write in their statements. (Compl. ¶ 40.)

On April 24, 2012, Plaintiff alleges Defendants Priddy, Doe #2, and Doe #3 responded to his wife's call reporting that her daughter was being choked by McGraw. (Compl. ¶ 42.) During

the domestic dispute investigation, Plaintiff alleges Defendant Doe #2 asked "[a]ren't you Damon McDowell's daughter?" (*Id.*)  Plaintiff alleges his daughter answered in the affirmative to which Defendant Doe #2 stated "[w]ell, you are definitely going!" (*Id.*) Plaintiff's daughter was placed under arrest and, again, no charges were brought against McGraw. (*Id.*)

Plaintiff alleges the following claims for relief:

Count I –       Violation of 42 U.S.C. § 1981- (Defendants Peck, Capehart and Doe #1 in their individual and official capacities)

Count II –      Violation of 42 U.S.C. § 1983 - (Defendants Peck, Capehart, Doe #1, Doe #2, Priddy, and Doe #3 in their individual and official capacities)

Count III –     Violation of 42 U.S.C. § 1983 - (Sophia Defendants)

Count IV –      Race Discrimination Under The West Virginia Human Rights Act ("WVHRA") (All Defendants)

Count V –       Violation of the West Virginia Wage Payment and Collection Act (Defendant Peck and Sophia Defendants).

## II.    STANDARD OF REVIEW

In addressing a motion to dismiss, a court may consider a plaintiff's factual allegations made in the complaint, any exhibits attached thereto, documents attached to the motion to dismiss that are authentic and integral to the complaint, and any matters of public record of which the court may take judicial notice. *Lee v. City of S. Charleston*, 2009 WL 2602378 *2 (S.D. W. Va.  Aug. 21, 2009) (citing (*Blankenship v. Manchin,* 471 F.3d 523, 526 n. 1 (4th Cir. 2006) (matters attached to motion to dismiss that are authentic and integral); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (public records); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1364.) "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).   If a court chooses to convert a motion to dismiss to a motion for summary judgment, the parties must be given a reasonable opportunity to present all materials that are pertinent to the motion.   *Id*.

The Beckley Defendants acknowledge that the Court may generally only consider the complaint, any exhibits attached to the complaint, documents attached to a defendant's response which are authentic and integral to the complaint, and any matters of public record of which the court may take judicial notice. (Document 11 at 5.)   However, the Beckley Defendants argue the police reports attached to their motion to dismiss "are public records which fall within the exceptions to the general rule governing matters outside the pleadings." (*Id*.)   In response, Plaintiff argues the Court should not consider the police reports because such reports are not integral to or specifically relied upon in the Complaint. (Document 14 at 5.)   Further, Plaintiff argues the police reports are self-serving reports created by the Beckley Defendant in the course of their unlawful actions. (*Id*. at 5-6.)   Finally, Plaintiff contends that police reports are not authentic or complete because the reports do not contain the witness statements or Applebee's receipts relied on in the police reports. (*Id*. at 6.)   In reply, Defendants argue "public records" are defined by the West Virginia Freedom of Information Act as "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." W. Va. Code § 29B-1-2(4) (2012). (Document 16 at 3.) Defendants argue a police report can, therefore, be considered as a "public record" without converting the motion to dismiss to a motion for summary judgment. (*Id*.) (citing *Zavolta v. Henderson*, 2011 U.S. Dist. LEXIS 50176, 5-6 (N.D. W. Va. 2011)).   The instant case is easily distinguishable from the case relied on by the Defendants. In *Zavolta*, the defendants contended, in their motion to dismiss, that a particular plaintiff was not in

the car at the time of a car collision because the police report did not mention her name. *Zavolta,* 2011 U.S. Dist. LEXIS 50176 at 5-6.   On the other hand, in this case, the police reports directly relate to the Plaintiff's claims.   The Court finds the police reports are not integral to, nor specifically relied upon, in Plaintiff's Complaint.   Further, the Court finds the police reports are not matters of "public record" of which the Court may take judicial notice.   The police reports are essentially the Defendant's version of the facts rather than the usual public record.   Clearly, the police reports may be "public records" subject to a FOIA, but it would be absurd to conclude the Court should take judicial notice of the substance of such public records for the purpose of addressing a 12(b)(6) motion. Therefore, the Court will not consider the police reports in consideration of Defendants' motion to dismiss.   Further, the Court declines to use its discretionary authority under Rule 12(d) of the Federal Rules of Civil Procedure to convert this motion, brought pursuant to Rule 12(b)(6), to a motion for summary judgment because consideration of the issues presented in the police reports will be more appropriate after the parties have had an opportunity to fully conduct discovery.[3]

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff must provide a "short and plain statement of the claim showing . . . entitle[ment] to relief," and is not required to plead specific facts in the complaint.   Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Id.* at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (stating that "the

---

[3] The Court notes that Defendants do not ask the Court to convert their motion to dismiss into a motion for summary judgment nor does the Court choose to make such a conversion.

Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor . . .." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."   *Iqbal*, 129 S.Ct. at 1950.

### III.    BECKLEY DEFENDANTS' MOTION TO DISMISS

Defendants Capehart, Priddy, Doe #1, Doe #2, and Doe #3 move to dismiss Counts I, II and IV under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and also on qualified immunity grounds. (Document 10 at 1.)

#### A.   § 1981 Claim (Count I)

Defendants Capehart and Doe #1 move to dismiss Plaintiff's §1981 claim (Count I) on the ground that Plaintiff failed to allege sufficient facts which establish that their acts were racially motivated and purposefully discriminatory. (Document 11 at 6.)   They argue the Plaintiff's conclusory statement that Defendants' conduct was motivated by race is insufficient. (*Id*.) Defendants Capehart and Doe #1 submit that their actions were motivated by McGraw's statement rather than race. (*Id*.)   Defendants Capehart and Doe #1 contend factually neutral allegations consistent with lawful behavior are insufficient to defeat their motion to dismiss Plaintiff's § 1981 claim.

In response, Plaintiff argues that he need only allege sufficiently plausible facts and subsequently prove "(1) that he is a member of a racial minority, (2) that Defendants acted with an intent to discriminate against him on the basis of race, and (3) that Defendants' race discrimination concerned Plaintiff's making performance, modification, and termination of contracts or the enjoyment of all benefits privileges terms and conditions of the contractual relationship." (Document 17 at 7 (*Orgain v. City of Salisbury,*, 521 F.Supp.2d 465, 498 (D.Md. 2007) aff'd in part sub nom, *Orgain v. City of Salisbury, Md.* 305 F. App'x 90 (4th Cir. 2008).)  Plaintiff argues Defendants Capehart and Doe #1 do not dispute that he has adequately pled facts for the first and third elements, but they only challenge Plaintiff's allegations with respect to intentional discrimination on the basis of race. (Document 17 at 7.)  Plaintiff argues the Court may easily infer racial animus from the Applebee's investigation done with the purpose of assisting Defendant Peck's racially motivated termination. Plaintiff also argues the intentional discriminatory motivation can be inferred by the Defendants' failure to charge a white man, McGraw, when he would be equally culpable for the alleged illegal actions. (*Id.* at 8.)  Finally, Plaintiff argues that it would be reasonable to assume the discriminatory animus displayed in the prior traffic stop remained and motivated Defendants Capehart and Doe #1's conduct during the Applebee's investigation. (*Id.*)

In reply, Defendants Capehart and Doe #1 argue Plaintiff is unable to show their actions were directly motivated by race so he argues their actions were in concert with Defendant Peck and the Sophia Defendants "scheme." (Document 16 at 5.)  Defendants Capehart and Doe #1 argue Plaintiff failed to allege they were aware of this alleged "scheme." (*Id.*) Further, Defendants Capehart and Doe #1 assert that Plaintiff's allegations from the prior traffic stop, when accepted as true, do not demonstrate "discriminatory animus." (*Id.* at 6.)  In his surreply, Plaintiff argues that

9

although the attached police report should not be considered, the fact that the witness statements are addressed to Defendant Peck further demonstrated the existence of concerted activity between Defendant Peck and the Beckley Defendants. (Document 18-1 at 2.)

Clearly, Plaintiff has adequately pled that he is a member of a racial minority to meet the first prong of a §1981 claim. (Compl. ¶ 14) Plaintiff alleges Defendant Peck told him that the Beckley Police Department had a warrant for his arrest arising from the Applebee's incident but that if he resigned they would not arrest him. (Compl. ¶ 30.)   Plaintiff alleges Capehart and Doe #1 participated in this scheme and waited to arrest him until after Defendant Peck's efforts to get him to resign failed. (Compl. ¶ 47.)   Plaintiff further alleges Capehart and Doe #1 engaged in disparate treatment of plaintiff when enforcing the laws, thereby denying him the same employments rights and protection afforded to white employees. (*Id*.)   Plaintiff alleges Defendants Peck, Capehart and Doe #1 acted in concert to deny him of his right to full and equal benefit of the laws and his rights to be subject to like punishment under 42 U.S.C. §1981. (Compl. ¶ 48.)   Although not listed in Count One, Plaintiff alleges Defendants Peck, Capehart and Doe #1 acted in concert with one another to impair his employment rights by arresting him after he refused to resign.   Defendants Capehart and Doe #1's racially motivated intent to discriminate can be inferred by the allegedly discriminatory arrest, the failure to arrest a similarly situated white male, and from the allegation of a racially motivated, unlawful, pretextual stop and unlawful detention. (*See* Compl. ¶¶ 27, 37, 57.)   Thus, the Complaint read *in totem* presents adequate facts, when assumed to be true and when all reasonable inferences from such facts are drawn in favor of the Plaintiff, to support that Defendants Capehart and Doe #1's Applebee's investigation was done in concert with Defendant Peck's allegedly racially motivated termination.   Therefore, Defendants Capehart and Doe #1's motion to dismiss the §1981 claim (Count 1) is denied.

10

**B.  § 1983 Claim (Count II)**

All Beckley Defendants move to dismiss Plaintiff's § 1983 claim. First, the Beckley Defendants move to dismiss the official capacity claim because the City of Beckley has not been named as a Defendant in this case. (Document 11 at 7.)  Plaintiff rightfully concedes that the §1983 claim should be dismissed against the Beckley Defendants. (Document 17 at n4.). Therefore, Plaintiff's "official capacity" claims against the Beckley Defendants will be dismissed. The Beckley Defendants also argue that the individual capacity claims must likewise be dismissed. The §1983 claims against the two groups of Beckley Defendants are considered separately below.

### 1.   Defendants Priddy, Doe #2 and Doe #3

Plaintiff alleges Defendants Priddy, Doe #2 and Doe #3 responded to his wife's call that their daughter was being choked by McGraw.   Plaintiff alleges that after his daughter confirmed he was her father, Defendant Doe #2 stated, "Well, you are definitely going!" (*Id*.)   In support of his §1983 claim, Plaintiff alleges Defendants Priddy, Doe #2 and Doe #3, engaged in retaliation against him by arresting his daughter based upon her race and based upon his race. (Compl. ¶ 59.)

In support, Defendants Priddy, Doe #2 and Doe #3 argue dismissal is clearly appropriate because their alleged involvement in the April 24, 2012 arrest of Plaintiff's daughter does not implicate the Plaintiff's Fourth or Fourteenth Amendment rights in any way. Furthermore, Defendants Priddy, Doe #2 and Doe #3 argue Plaintiff failed to plead any facts that establish these Defendants' acts were racially motivated or purposefully discriminatory to *him*. (Document 11 at 8.) In response, Plaintiff argues he has adequately pled a racially motivated violation of his constitutional "rights under the Fourteenth Amendment to be given equal protection under the law and be free of retaliation based upon race." (Document 17 at 11.)

11

A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity. *The Baltimore Sun Co. v. Ehrlich,* 437 F.3d 410, 416 (4th Cir. 2006). The three elements of a retaliation claim are: (1) protected activity by the plaintiff, (2) an adverse action against plaintiff that chills the plaintiff's protected activity, and (3) a causal relationship between the protected activity and the adverse action. *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir. 2000).

*Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 11-1957, 2012 WL 1548194 (4th Cir. May 3, 2012). Plaintiff argues the concept of retaliatory conduct has been expanded to "include conduct that might dissuade a reasonable person from making or supporting a charge of discrimination." (Document 17 at 10 (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006))). Plaintiff argues that Defendant Doe #2, acting in concert with Defendants Doe #3 and Priddy, stated that Plaintiff's daughter was definitely going to jail because she was his daughter. (Document 17 at 10.) Plaintiff argues this "retaliation was calculated to dissuade him from opposing the discrimination he suffered at the hands of the Sophia Defendants and Defendants Capehart and Doe #1." (*Id.*) In conclusion, Plaintiff argues that if he had been dissuaded from opposing the discrimination he suffered, his equal protection and due process rights could not be vindicated. (*Id.*)

In reply, Defendants argue *Haley* is inapplicable because Plaintiff's claims are not against a government entity and he abandoned his official capacity claim. (Document 16 at 9.) Further, Defendants argue *White* does not stand for the proposition that retaliatory conduct can be expanded to "include conduct that might dissuade a reasonable person from making or supporting a charge of discrimination." (*Id.*) Unlike the instant case where Defendants Priddy, Doe #2 and Doe #3 were not Plaintiff's employer, Defendants argue that *White* addressed Title VII claims by an employee against her employer rather than §1981 or §1983 claims.

The Court finds Plaintiff merely recites a legal conclusion "wholly devoid of facts" to support a §1983 claim against Defendants Priddy, Doe #2, and Doe #3 that they intentionally discriminated against him in arresting his daughter based upon their race. The Court need not accept allegations in the complaint, labeled as fact, but which constitute nothing more than "legal conclusions" or "naked assertions." *Ashcroft v. Iqbal,* 556 U .S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). Plaintiff fails to state a §1983 claim against Defendants Priddy, Doe #2, and Doe #3 for intentional racial discrimination in violation of the Equal Protection Clause because he fails to allege any plausible facts, when taken as true, that Defendants Priddy, Doe #2, and Doe #3 were motivated by race in the arrest of his daughter. Unlike the allegations of prior racially motivated conduct of Defendants Capehart and Doe #1, Plaintiff also fails to allege plausible facts from which the Court could *infer* that Doe #2's statement was racially motivated and intentionally discriminatory.

Further, even accepting Plaintiff's argument that the concept of retaliatory conduct has been expanded to "include conduct that might dissuade a reasonable person from making or supporting a charge of discrimination," Plaintiff fails to allege anything more than that Defendants Priddy, Doe #2, and Doe #3 "engaged in retaliation against him." (Compl. ¶ 59.)   Plaintiff fails to allege facts to support the allegation that Defendants Priddy, Doe #2, and Doe #3 denied *him* a constitutionally protected activity.   At best, Plaintiff appears to allege his daughter was denied equal protection based upon her arrest and the aforementioned defendants' failure to arrest her Caucasian boyfriend.   Nevertheless, Ms. McDowell is not a plaintiff in this case.   Furthermore, Plaintiff fails to allege sufficient facts to support a causal connection between his constitutionally protected activity and the allegedly retaliatory conduct.   In sum, Plaintiff does not allege any facts to support a connection between the arrest of his daughter and his dealings with the other

defendants.   The Court finds Plaintiff failed to state a §1983 claim against Defendants Priddy, Doe #2, and Doe #3.   Accordingly, Defendants Priddy, Doe #2, and Doe #3's motion to dismiss Plaintiff's §1983 claim (Count II) is granted.

### 2.   Defendants Capehart and Doe #1

Defendants Capehart and Doe #1 argue Plaintiff's §1983 claim should be dismissed or alternatively stayed pending the resolution of criminal charges arising from the Applebee's arrest because in order to recover damages caused by the allegedly unlawful arrest, Plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." (Document 11 at 8) (citing and quoting *Eubanks v. United* States, 2010 U.S. Dist. LEXIS 27029, 3-4 (N.D. W. Va. 2010) citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (footnote omitted)).   Further, Capehart and Doe #1 argue that when a plaintiff "files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." (*Id.* at 19) (citing and quoting *Wallace v. Kato*, 549 U.S. 384, 393-394 (2007)).

In response, Plaintiff argues the Court may not dismiss this matter because of the pending criminal matter, but agrees that the Court has discretion to stay the case. (Document 14 at 11.) Plaintiff, nevertheless, argues a stay is inappropriate because his case "entails multiple defendants arising from an extensive course of discriminatory conduct preceding and subsequent to Plaintiff's employment termination by the Sophia Defendants." (Document 17 at 12.)   Moreover, Plaintiff contends that a stay of the claims against Defendants Capehart and Doe #1 and a stay of discovery

arising from the Applebee's incident would prejudice him in his claims against the Sophia Defendants. (Document 17 at 12.)

Plaintiff also argues the *Heck* rule does not apply to his §1983 claims because his claims are not for false arrest but instead based on "racially motivated disparate treatment, i.e. Defendants Capehart and Doe #1 pursued criminal charges against [him] and chose not to pursue criminal charges for the same conduct in the same incident against a Caucasian, McGraw, because of [his] race." (*Id*. at 12.)   Thus, Plaintiff argues the §1983 claim should not be stayed because a conviction would not bar his action for "disparate application of the law in violation of equal protection and due process under the Constitution." (*Id*.)   Capehart and Doe #1 do not respond to this argument as it relates to this claim.

In reply, Defendants argue the §1983 claim against Capehart and Doe #1 is premised on conclusory allegations that this Court need not accept as true. (*Id*. at 7.)   Defendants Capehart and Doe #1 also argue that when considering Plaintiff's conclusory allegations along with the police report, it is clear that their "actions in regard to the March 20, 2012 incident were the result of McGraw's statements to officers in the course of a criminal investigation that Plaintiff had purchased alcohol for him." (*Id*.)   Further, Defendants Capehart and Doe #1 argue that *Wallace* specifically recommends that the Court stay the false arrest claim pending the outcome of the criminal case on which the false arrest claim is premised. (*Id*.) (citing *Wallace*, 549 U.S. at 393-94.)   In support of their motion to dismiss, Defendants Capehart and Doe #1 rely on police reports this Court will not consider at this stage of the proceedings.

It is well established that police may not selectively enforce the laws on the basis of race. *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 813 (1996).   Plaintiff's claim is essentially that his equal protection rights were violated by Defendant's selective enforcement of the law based on

race.   To allege an equal protection violation based on a claim of selective enforcement, a plaintiff must show "(1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001).

The Complaint, read *in totem,* presents adequate facts, when assumed to be true and when drawing all reasonable inferences, from those facts, in favor of Plaintiff, to support that Defendants Capehart and Doe #1's Applebee's investigation and arrest were done in concert with Defendant Peck's allegedly racially motivated termination in violation of his equal protection and due process rights.   Further, the Court finds Plaintiff has sufficiently alleged plausible facts that the Defendants Capehart and Doe #1 treated him differently than a similarly situated Caucasian person.   Moreover, in light of the allegations with respect to the prior traffic stop, the Court finds Plaintiff has sufficiently alleged plausible facts from which to draw a reasonable inference that Defendants Capehart and Doe #1 were motivated by race.   Given the Plaintiff's objection to a stay and given that he has yet to receive the requisite favorable result on the underlying criminal charge necessary to sustain a claim of false arrest, as well as Plaintiff's affirmative statement that his claim against Defendants Capehart and Doe #1 is not for false arrest, the Court assumes he is abandoning that claim.   Accordingly, Defendants Capehart and Doe #1's motion to dismiss Plaintiff's §1983 claim is denied.

### WVHRA Claim (Count IV)

The WVHRA provides for a cause of action against individuals who aid or abet an unlawful discriminatory act.   *Holstein v. Norandex, Inc.,* 194 W. Va. 727, 730 (1995).   The WVHRA states in part that:

16

It shall be an unlawful discriminatory practice . . .

(7) For any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:

(A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section.

(B) Willfully obstruct or prevent any person from complying with the provisions of this article, or to resist, prevent, impede or interfere with the commission or any of its members or representatives in the performance of a duty under this article; or

(C) Engage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

W. Va. Code § 5-11-9(7). The term "discriminate" or "discrimination" "means to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate." W. Va. Code § 5-11-3(h).

### 1.  Defendants Capehart and Doe #1

With respect to Plaintiff's WVHRA claim, Defendants Capehart and Doe #1 argue that Plaintiff merely alleges conclusory allegations that they "acted in collaboration with Defendant Peck to arrest [him] in the furtherance of a conspiracy against him.   Capehart and Doe #1 argue Plaintiff "provides no factual support for his assertions that [they] acted or conspired against him based upon race." (*Id*. at 13.)   Capehart and Doe #1 argue Plaintiff was lawfully arrested after Defendant Peck terminated him. (*Id*.)   Defendants, again, rely heavily on the police report which the Court excludes from consideration at this stage of the proceedings.   In response, Plaintiff

argues he adequately alleged that Defendants Capehart and Doe #1, based upon his race, conspired with Defendant Peck to threaten to arrest him if he did not resign from his position with the Sophia Police Department. (Document 17 at 13.)

Plaintiff alleges "[t]he Sophia Defendants and Defendant Tomi Sue Peck, their agent, fired Plaintiff and had him arrested, in collaboration with Defendants Capehart and John Doe # 1, only because Plaintiff refused to resign." (Compl. ¶ 79.)   Plaintiff further alleges these actions were based on his race. (*Id.*)   Plaintiff also alleges Defendants Capehart and Doe #1 conspired with and/or aided and abetted Defendant Peck in discriminating against him. (Compl. ¶ 80.)   Plaintiff alleges Defendant Peck told him that the Beckley Police Department had a warrant for his arrest arising from the Applebee's incident but that if he resigned they would not arrest him. (Compl. ¶¶ 30.)   Both an agent (Capehart and Doe #1) and their principal (Peck) can be liable for the agent's wrongful acts committed in furtherance of the principal's business. *Holstein,* 194 W. Va. at 731. The complaint presents adequate facts, when assumed to be true and when drawing all reasonable inferences in favor of Plaintiff, to support a claim that Defendants Capehart and Doe #1's Applebee's investigation was done in concert with Defendant Peck's allegedly racially motivated termination in violation of the WVHRA. A reasonable inference can be drawn that Defendants Capehart and Doe #1 were involved in this scheme because of the allegation that Defendant Peck told him he would not be arrested by the Beckley Police Department if he agreed to resign.   When accepting this allegation as true, clearly, Defendants, Peck, Capehart and Doe #1 would have necessarily been acting in concert.   Accordingly, Defendants Capehart and Doe #1's motion to dismiss the WVHRA claim (Count 4) should be denied.

## 2.    Defendants Priddy, Doe #2 and Doe #3

Defendants Priddy, Doe #2 and Doe #3 argue the only factual support offered against them was a single comment allegedly made by Doe #2 during the arrest of Plaintiff's daughter. Plaintiff alleges that Doe #2 informed his daughter that she was "definitely going" to jail when he found out she was Plaintiff's daughter.   In his Complaint, Plaintiff alleges that "[a]fter [he] was fired and he went to rebut his unlawful discrimination that had occurred by showing that a server had purchased his drink, Defendants [Priddy, Doe #2 and Doe #3] retaliated against [him] by arresting his daughter based upon her race and base (sic) upon her relation to [him]." (Compl. ¶ 81.)   Plaintiff argues he sufficiently alleges Defendants Priddy, Doe# 2 and Doe #3 "retaliated against him when they arrested his daughter because she was 'Damon McDowell's daughter' and he had attempted to rebut the unlawful discrimination by proving his drink had been purchased by a server." (Document17 at 13.)   Plaintiff argues this shows the Defendants' conduct was for the purpose of aiding and abetting the Sophia Defendants *unlawful race discrimination* in connection with his employment. (*Id*. at 13-14.)   Unlike the allegations of prior racially motivated conduct of Defendants Capehart and Doe #1, Plaintiff fails to allege plausible facts to support his bare bones assertion that Defendants Priddy, Doe #2 and Doe #3 intentionally discriminated against his daughter and him based upon their race.   Further, Plaintiff fails to allege any facts to support that Defendants Priddy, Doe #2 and Doe #3 acted in concert with the Sophia Defendants or Defendants Capehart and Doe #1.   Thus, Plaintiff fails to state a WVHRA claim against Defendants Priddy, Doe #2 and Doe #3, and these defendants' motion to dismiss the WVHRA claim should be granted.

### C.  Qualified Immunity

All Beckley Defendants argue they are entitled to qualified immunity because reasonable officers could have believed that their actions were lawful in light of both clearly established law and information the officers possessed at the time of the acts in question. However, to the extent Plaintiff failed to state a claim against Defendants Priddy, Doe #2 and Doe #3, the Court need not consider their arguments with respect to qualified immunity.   Defendants Capehart and Doe #1 rely on the police reports which will not be considered as part of this 12(b)(6) motion to dismiss. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) cert. denied, 132 S. Ct. 781, 181 L. Ed. 2d 488 (U.S. 2011) (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009)).   In *Pearson*, the Supreme Court ruled that the district courts may exercise their sound discretion in deciding which prong to address first. *Pearson,* 555 U.S. at 236.

Defendants Capehart and Doe #1 argue "[q]ualified immunity protects law enforcement officers even in cases in which they mistakenly conclude that probable cause to arrest is present; actual probable cause is not necessary for an arrest to be objectively reasonable." (Document 11 at 10.) citing *Green*, 822 F. Supp. 1236, **8 (S.D. W. Va. 1993)).   With respect to the claims arising from the Applebee's incident, Defendants Capehart and Doe #1 argue "reasonable officers could have believed that their actions (in arresting McDowell) were lawful in light of both clearly established law and information the officers possessed at the time of the acts in question." (Document 11 at 10.)  With respect to the unreasonable detention and equal protection claims alleged in Paragraphs 27 and 57 of the Complaint, Defendants Capehart and Doe #1 argue that questioning Plaintiff about a vehicle he did not own, the presence of drugs in the vehicle, and

having a drug-sniffing dog sniff the vehicle were reasonable in light of clearly established law and the information the officers possessed at the time of the stop. The Fourth Circuit acknowledges, post-*Twombly*, that cases, involving the possibility of a qualified immunity defense, do not require any heightened pleading. *See In re Mills,* 287 F. App' x 273, 280 (4th Cir. 2008) (unpublished) (citing *Trulock v. Freeh,* 275 F.3d 391, 405 (4th Cir. 2001)).

The Court declines at this stage of the proceedings to decide whether the Defendants are entitled to qualified immunity as a defense to Plaintiff's allegations.   At this point, the Plaintiff's Complaint does not provide the Court with sufficient facts to conduct the necessary qualified immunity analysis.   This Court is mindful that the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).   However, at this point, Defendants Capehart and Doe #1 have failed to demonstrate an entitlement to qualified immunity. There does not appear to be an issue as to whether the alleged constitutional rights violated were "clearly established."   Thus, in order to determine if Defendants Capehart and Doe #1 are entitled to qualified immunity, the Court would have to make a determination as to whether they "could reasonably believe their actions were lawful." Without considering the police reports and without further development of the record, such a determination is premature, in this instance. Accordingly, the Court defers a ruling on qualified immunity.

## IV.   *CONCLUSION*

Wherefore, based on the findings herein, the Court does hereby **ORDER** that *Defendants Timothy Capehart, Frank Priddy, John Doe Officers #1 and #2 and Jane Doe Officer's Motion to Dismiss* (Document 10) be **GRANTED IN PART** and **DENIED IN PART**.   Specifically, the Court **ORDERS** that Plaintiff's Complaint be **DISMISSED** as to Defendants Priddy, John Doe

Officer #2, and Jane Doe Officer.   Further, the Court **ORDERS** that Plaintiff's claims against Defendants Capehart, Priddy, John Doe Officer #1, John Doe Officer #2, and Jane Doe Officer in their official capacity be **DISMISSED**.   However, Plaintiff is entitled to proceed on his remaining claims against Defendants Capehart and John Doe Officer #1.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    August 30, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA