IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DAMON MCDOWELL,

            Plaintiff,

v.                                         CIVIL ACTION NO.   5:12-cv-01340

TOWN OF SOPHIA, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

      The Court has reviewed *Defendants Town of Sophia, Town Council of Sophia, Sophia Police Department, and Tomi Sue Peck's Motion to Dismiss* ("Def.'s Mot.")(Document 95), their Memorandum of Law in Support and attached exhibit ("Def.'s Mem.")(Document 91), Plaintiff's response in opposition ("Pl.'s Resp.")(Document 121), and Defendants' reply ("Def.'s Rep.")(Document 126.)  After careful consideration, for the reasons stated herein, the Court grants Defendants' motion.

                    **I.**      **BACKGROUND**

      Plaintiff's Second Amended Complaint brings suit for race discrimination, racial profiling, violations of his civil rights against Defendants Town of Sophia, Town Council of Sophia, Sophia Police Department, Tomi Sue Peck ("Peck")[1], Timothy Capehart ("Capehart"), and Roy Redden ("Redden")[2], and for intentional spoliation of evidence against Defendants Town of Sophia, Town

---

[1] Defendant Peck is the Chief of the Sophia Police Department. (Sec. Am. Compl. ¶5.)
[2] Plaintiff's original Complaint also contained claims against Frank Priddy, John Doe Officer #1, John Doe Officer #2, and Jane Doe Officer. (Document 1.) However, on August 30, 2012, the Court granted in part and denied in part

Council of Sophia, Sophia Police Department, and Tomi Sue Peck. (Second Amended Complaint ("Sec. Am. Compl.") (Document 65)). Defendants Town of Sophia, Town Council of Sophia, the Sophia Police Department, and Peck are collectively referred to as the "Sophia Defendants."

Plaintiff's Second Amended Complaint contains six (6) Counts. First, Plaintiff alleges a violation of 42 U.S.C. § 1981 (Count I) against Defendants Peck, Capehart, and Redden, in their individual capacities. (Sec. Am. Compl. ¶¶ 39-47.) Second, Plaintiff alleges a violation of 42 U.S.C. § 1983 (Count II) against Defendants Peck, Capehart, and Redden, in their individual capacities. (Sec. Am. Compl. ¶¶ 48-57.) Third, Plaintiff alleges a violation of 42 U.S.C. § 1983 (Count III) against the Sophia Defendants. (Sec. Am. Compl. ¶¶ 58-67.) Fourth, Plaintiff alleges a West Virginia Human Rights Act violation (Count IV) against all Defendants. (Sec. Am. Compl. ¶¶ 68-80.) Fifth, Plaintiff alleges a violation of the West Virginia Wage Payment and Collection Act (Count V) against Defendant Peck and the Sophia Defendants. (Sec. Am. Compl. ¶¶ 81-85.) Finally, Plaintiff alleges Intentional Spoliation of Evidence (Count VI) against the Sophia Defendants and Defendant Peck. (Sec. Am. Compl. ¶¶ 86-100.) Only Count VI is the subject of the pending motion to dismiss.

Plaintiff's claim of Intentional Spoliation of Evidence is based primarily on three incidents following the commencement of this lawsuit on April 30, 2012, and the Sophia Defendants' notice of Plaintiff's claims. (Sec. Am. Compl. ¶ 86-100.)[3] Plaintiff's allegations of the Sophia Defendants' failure to preserve evidence and Defendant Peck's alterations of two documents are described more fully below.

---

Defendants Timothy Capehart, Frank Priddy, John Doe Officers #1 and #2, and Jane Doe Officer's Motion to Dismiss. (Document 31.) Specifically, the Court ordered that Plaintiff's Complaint be dismissed as to Defendants Priddy, John Doe Officer #2, and Jane Doe Officer. (*Id.*). The Court further ordered that Plaintiff's claims against Defendant Capehart, Priddy, John Doe Officer #1, John Doe Officer #2, and Jane Doe Officer in their official capacity be dismissed. (*Id.*) By Order entered October 24, 2012, the Court construed the parties' stipulation allowing Plaintiff to amend his Complaint to identify Roy Redden as "John Doe Officer #1" as a motion and granted it. (Document 44.)
3 Plaintiff alleges that "the Sophia Defendants and Tomi Sue Peck have had actual knowledge of the lawsuit since such time or the week that followed." (Sec. Am. Compl. ¶ 88.)

First, Plaintiff alleges that by "failing to preserve evidence for more than six months, Defendants have intentionally spoliated evidence that existed on the computers of the Sophia Police Department." (Sec. Am. Compl. ¶ 96.) Plaintiff alleges that during a May 11, 2012 evidentiary hearing regarding Plaintiff's claim for unemployment compensation benefits, an "investigative report" was produced. (Sec. Am. Compl. ¶¶ 89-91.)[4] Defendant Peck testified it "was her complete investigative report and that she typed it on the computer at the Sophia Police Department . . . [and] assumed that a copy still remains on the computer." (Sec. Am. Compl. ¶91.) Plaintiff alleges that his counsel reminded the Sophia Defendants of their duty to preserve evidence. (Sec. Am. Compl. ¶92.) Plaintiff alleges that the Sophia Defendants "did not make any immediate efforts to preserve evidence that may have existed on the computers of the Sophia Police Department, including, but not limited to, temporary files and metadata that would have established when the investigative report and other documents were created, modified, or deleted." (*Id.*) Rather, Plaintiff alleges that the Sophia Defendants "permitted and continue to permit to this day, the daily use of the computers within the Sophia Police Department, thereby permitting relevant files and data to be at risk for being deleted or overwritten." (*Id.*)

Plaintiff alleges that "Defendants waited until October 11-12, 2012 – some six months after this lawsuit commenced, five months after computer evidence was discussed at the unemployment hearing, and two months after Plaintiff requested native files and metadata -- before Defendants made any attempt to preserve evidence." (Sec. Am. Compl. ¶94.)[5] Plaintiff asserts that "Defendants maintain that the investigative report and other requested documents . . .

---

4 Plaintiff alleges that Defendant Town of Sophia was required by subpoena to produce, among other documents, "any investigative file or document of any kind . . . that pertained to any disciplinary action against [Plaintiff]." (Sec. Am. Compl. ¶¶ 89-90.)
5 Plaintiff alleges that "[o]n October 11-12, 2012, Defendants purportedly made 'images' of the computers as they existed on October 11-12, 2012." (Sec. Am. Compl. ¶94.) However, Plaintiff argues that the Sophia Defendants "refuse to provide sufficient evidence for Plaintiff to be able to evaluate whether the October 11-12 images are even forensically sound." (Sec. Am. Compl. ¶96.)

3

are no longer believed to exist on the computers, because they believe that the documents were not saved on the computers when they were created." (Sec. Am. Compl. ¶95.) Plaintiff argues that by "le[aving] the computers at the Sophia Police Department in operation for daily use . . . the computer files [were] at risk for being deleted and overwritten [and] [a]s a result, evidence was spoliated. (Sec. Am. Compl. ¶96.)

Second, Plaintiff alleges that Defendant Peck altered her "investigative report." (Sec. Am. Compl. ¶97.) Plaintiff asserts that Defendant Peck "acknowledged during the [unemployment] hearing that she had not included within her investigative report the alleged fact that Plaintiff failed to show up for a meeting." (*Id*.) However, "that same document was produced on October 15, 2012 . . . and it now provides in handwriting: *"Final-Insubordination-Failed to show for mandatory meeting."* (*Id*.) Therefore, Plaintiff contends that "the document was altered after the fact." (*Id*.)

Third, Plaintiff alleges that Defendant Peck altered a "timeline" she prepared for a witness' testimony. (Sec. Am. Compl. ¶98.) Plaintiff contends that at the unemployment hearing, before the witness testified, "Defendant Peck – in the presence of counsel and the Administrative Law Judge – altered the timeline to change the date that Plaintiff was allegedly 'fired' from March 23, 2012 to March 24, 2012." (Sec. Am. Compl. ¶98.)

Plaintiff claims that "[t]he spoliated evidence described herein was vital to Plaintiff's claims in this action and his ability to prevail." (Sec. Am. Compl. ¶99.) Plaintiff also claims that "[a]s a result of Defendants' intentional and/or reckless conduct, Plaintiff has suffered damages, and he is entitled to compensatory and punitive damages for the tort of intentional spoliation." (Sec. Am. Compl. ¶100.)

## II.     PROCEDURAL HISTORY

On October 30, 2012, Plaintiff filed a *Motion to Amend Complaint to Add Claim for Intentional Spoliation of Evidence Against Sophia Defendants and Tomi Sue Peck.* (Document 53.)   On November 19, 2012, the Court granted Plaintiff's motion and directed the Clerk to file the Second Amended Complaint. (Document 64.)   Then, on December 4, 2012, the Court granted *Defendants' Motion for Leave to File a 12(b)(6) Motion to Dismiss* (Document 66) and ordered that Defendants be permitted to address any new cause of action alleged in the Plaintiff's Second Amended Complaint in said motion. (Document 74.)[6]

On December 14, 2012, Defendants Town of Sophia, Town Council of Sophia, Sophia Police Department, and Tomi Sue Peck filed their *Memorandum of Law in Support of Partial Motion to Dismiss* with attached exhibit. (Def.'s Mem.)(Document 91.) Then, on December 18, 2012, they filed their *Motion to Dismiss* (Def.'s Mot.)(Document 95)[7], wherein they move for an order "dismissing Plaintiff's claim for spoliation of evidence as set forth in Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted." (*Id*. at 1.) On December 28, 2012, Plaintiff filed his response in opposition ("Pl.'s Resp.")(Document 121.) On January 7, 2013, Defendants filed their reply ("Def.'s Rep.")(Document 126.)

Although the Sophia Defendants did not file their Motion to Dismiss with their Memorandum of Law in Support on December 14, 2012, the Court, in the interest of justice, will consider the motion. The Court notes that because pleadings were closed at the time the Sophia

---

6 The Court further ordered that Defendant's Motion to Dismiss be filed and served by December 14, 2012, with responses due by December 28, 2012, and replies due by January 7, 2013. (Document 74.)

7 Defendants acknowledge that although they timely filed their Memorandum of Law in Support of their Motion to Dismiss, they "inadvertently did not file this accompanying Motion to Dismiss." (Document 95.) "Defendants ask this Court to excuse the late filing of the Motion to Dismiss in light of the fact that Defendants' Memorandum of Law in Support of its Motion to Dismiss, containing all of the Defendants' arguments, was timely filed." (*Id.* at 2.)

Defendants filed their Motion to Dismiss, the motion should have been raised pursuant to Rule 12(c). *Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir.2002). However, the same standard of review applies to motions under Rule 12(b)(6) and Rule 12(c). (*Id.*at 405-06) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999)).

### III. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555.)

In addressing a motion to dismiss, a court may consider a plaintiff's factual allegations made in the complaint, any exhibits attached thereto, documents attached to the motion to dismiss that are authentic and integral to the complaint, and any matters of public record of which the court may take judicial notice. *Lee v. City of S. Charleston*, 2009 WL 2602378 *2 (S.D. W. Va. Aug. 21, 2009) (citing *Blankenship v. Manchin,* 471 F.3d 523, 526 n. 1 (4th Cir. 2006) (matters attached to motion to dismiss that are authentic and integral); *Hall v. Virginia,* 385 F.3d 421, 424 (4th Cir.

2004) (public records); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1364.))

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

### IV. APPLICABLE LAW

In West Virginia, the tort of intentional spoliation of evidence[8] consists of the following elements:

> (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages.

*Hannah v. Heeter,* 584 S.E.2d 560, 573 (W.Va.2003). In *Hannah*, the Court noted that "[o]nce the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending

---

8 In *Hannah v. Heeter,* 584 S.E.2d 560 (W.Va.2003), the West Virginia Supreme Court held that "West Virginia recognizes intentional spoliation of evidence as a standalone tort when done by either a party to a civil action or a third party." (*Id.* at 571.)

7

or potential litigation." (*Id.*) Therefore, "[t]he spoliator must overcome the rebuttable presumption or else be liable for damages." (*Id.*) The Court also expounded on the element of "intent." (*Id.*)

> We caution that the party injured by spoliation must show more than the fact that potential evidence was intentionally destroyed. The gravamen of the tort of intentional spoliation is the *intent to defeat a person's ability to prevail in a civil action.* Therefore, it must be shown that the evidence was destroyed with the specific intent to defeat a pending or potential lawsuit.

(*Id.*) "Both knowledge and intent may be shown by circumstantial evidence." *Williams v. Great West Casualty Company,* No. 5:08-cv-137, 2009 WL 1515319, at *4 (N.D.W. Va. 2009) (citing *Mace v. Ford Motor Company,* 653 S.E.2d 660, 666 (W.Va.2007)) ("'a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence'") (quoting *Hinerman v. Daily Gazette Co.,* 423 S.E.2d 560, 573 n. 18 (W.Va.1992)).

## V. DISCUSSION

In their memorandum of law in support of their motion to dismiss, the Sophia Defendants argue that Plaintiff has failed to show three elements of intentional spoliation, namely: (3) willful destruction of evidence; (5) Defendants' specific intent to defeat Plaintiff's ability to prevail in this case; and (6) Plaintiff's inability to prevail in this case. (Def.'s Mem. at 4-9.)

First, the Sophia Defendants argue that "Plaintiff has not put forth any evidence, nor can he put forth any, that shows that these Defendants destroyed any evidence or took any action with regard to their computers with the intent to destroy documents." (*Id.* at 4-5.) The Sophia Defendants contend that "[a]ny destruction of evidence which may have occurred, if any, was the result of the normal functions of the computer's operating system." (*Id.* at 6.) Therefore, the Sophia Defendants argue that "Plaintiff's allegations, if true, would amount to a claim of negligent spoliation, not intentional spoliation." (*Id.* at 6.) Furthermore, the Sophia Defendants argue that "[b]ecause the search results of the images have not yet been reviewed, the Plaintiff cannot

8

affirmatively state whether the documents he has requested in discovery are or are not contained within the search results." (*Id.*)

With regard to Plaintiff's allegation that Defendant Peck altered two documents since the onset of litigation, the Sophia Defendants argue that "there is no evidence to support that Defendant Peck willfully destroyed evidence." (*Id.* at 6.) First, the Sophia Defendants note that Plaintiff's claim that Defendant Peck altered her investigative report is based on a copy being produced with a handwritten note. (*Id.*) They argue that "Plaintiff has an unaltered copy of the document and is still able to show what the document appeared as in its original condition, which does not prejudice his case." (*Id.*) Second, the Sophia Defendants argue that Plaintiff's allegation that Defendant Peck altered the timeline "fails to show that [she] destroyed the document." (Def.'s Mem. at 7.) They contend that "[c]orrecting a typographical error with an ink pen on a typed document, on the record in open court, hardly amounts to destruction of evidence." (*Id.*)

Second, the Sophia Defendants argue that "Plaintiff puts forth no evidence, nor would he be able to at trial, that suggests that the evidence was intentionally spoliated to defeat the Plaintiff's claims." (*Id.*) They assert that "[t]he necessity of keeping the computers in use was made for no other reason than to ensure that the Sophia Police Department had access to their police files to ensure that they could perform their public service properly." (*Id.*) The Sophia Defendants note that "Plaintiff has not presented any evidence to rebut this fact and that [the computers] were kept in use for any improper reason" and "has pointed to no authority for his allegation that the Defendants were required to immediately cease using all of their computers until such a time as the Plaintiff may or may not decide to inspect them." (*Id.* at 7-8.)

The Sophia Defendants also argue that Plaintiff's claim concerning the investigative report is insufficient because "an additional hand-written note to a document does not prevent the

9

Plaintiff from prevailing on his claim" and "hardly amounts to destruction of evidence." (*Id.*) The Sophia Defendants stress that "Plaintiff has copies of the document before and after the handwritten note was added." (*Id.*) With regard to Plaintiff's allegation that Defendant Peck altered the "timeline," the Sophia Defendants argue that "[t]o assert that Defendant Peck 'altered' a type-written document by writing on the document, by hand in ink, in front of Plaintiff's counsel and in Court for the purpose of defeating Plaintiff's ability to prevail is without merit." (*Id.* at 8.) They contend that "Plaintiff's counsel has a written transcript regarding the alleged 'alteration' of the document and the handwriting is clearly distinguishable from the typed writing." (*Id.*) The Sophia Defendants also argue that "Plaintiff cannot show that the handwriting on the document somehow affects his ability to use the document or to present his case." (*Id.*)

Third, the Sophia Defendants argue that "Plaintiff cannot show that he is unable to prevail in this case." (*Id.*) In support, they assert that "Plaintiff states no specific reason for how any of this alleged spoliation will prevent him from presenting evidence that he was allegedly terminated for an improper reason." (*Id.*) The Sophia Defendants argue that "Plaintiff has been provided complete copies of all documents known to the Defendants that are responsive to his discovery requests, and the Defendants have agreed to conduct a search of images on the hard drives of the Sophia Police Department computers." (*Id.* at 9.) Therefore, the Sophia Defendants contend that Plaintiff cannot meet the elements required to assert a proper claim for intentional spoliation. (*Id.*)

Plaintiff responds to the Sophia Defendants' motion by arguing that they have misapplied the standard of review on a motion to dismiss. (Pl.'s Resp. at 1-2.) He contends that "[t]he essence of the Sophia Defendants' argument for dismissal of Plaintiff's intentional spoliation is that Plaintiff has not 'put forth any evidence' to support his claim." (*Id.* at 7.) However, Plaintiff argues that "[he] is not required to 'put forth any evidence' at this juncture." (*Id.*) He argues that

10

his intentional spoliation claim "meets the pleading standard articulated in Federal Rule of Civil Procedure 8 and applicable case law." (Pl.'s Resp. at 2.)

Plaintiff contends that "[d]espite their acknowledgment of their preservation duty, the Sophia Defendants have engaged in a course of conduct displaying complete disregard for their obligation to preserve evidence, particularly in connection with the Sophia Police Department computers." (*Id.* at 5.) Plaintiff asserts that the Sophia Defendants were placed on notice of Plaintiff's claims and of their legal obligation to preserve evidence with the filing of this legal action on April 30, 2012. (*Id.*) (citing Sec. Am. Compl. ¶88.)  He argues "[t]he Sophia Defendants' willful destruction of evidence may be inferred from the conduct that is alleged in the Second Amended Complaint." (Pl.'s Resp. at 6.)   Plaintiff also asserts that "intent may be proven by circumstantial evidence and, therefore, requires discovery." (*Id.*) (citing Williams, 2009 WL 1515319 at *4.)   He alleges that "the spoliated evidence was vital to [his] claims and his ability to prevail" and that "[t]he Sophia Defendants' conduct shows their intention to spoliate evidence." (Pl.'s Resp. at 6.) (citing Sec. Am. Compl. ¶¶ 99-100.)[9]  Finally, Plaintiff argues that "discovery is necessary to determine what evidence was actually lost through the Sophia Defendants' unlawful conduct and what impact such loss of evidence has on Plaintiff's ability to prevail in this action." (Pl.'s Rep. at 7.)

In reply, the Sophia Defendants agree that Plaintiff is not required to "prove" or "submit evidence" of intentional spoliation at this stage. (Def.'s Rep. at 2.) However, they argue that Plaintiff's Complaint "must do more than merely recite the elements of intentional spoliation." (*Id.*) First, they contend that "Plaintiff's Second Amended Complaint [f]ails to [s]tate [h]ow the [e]vidence [a]llegedly [s]poliated by Defendants was [v]ital to Plaintiff's [a]bility to [p]revail." (*Id.* at 3.) The Sophia Defendants stress that "in discussing several items allegedly spoliated,

---

9 Paragraph 100 states "[a]s a result of Defendants' intentional and/or reckless conduct. . ." (Sec. Am. Compl. ¶100.)

11

namely the documents allegedly altered at various court hearings, the Plaintiff does not deny that the evidence is in his possession and that a record was created to show how, when, why, where, and by whom said documents were allegedly altered." (*Id.*) Second, they argue that "Plaintiff [f]ails to [a]llege [f]acts [s]ufficient to [m]eet the [d]amages [e]lement of Intentional Spoliation." (*Id.* at 4.) The Sophia Defendants contend that "Plaintiff makes no mention of how he has allegedly been damaged." (*Id.*) Third, Defendants argue that "Plaintiff's Second Amended Complaint does not even contain threadbare recitals with regard to the Defendants' intent." (*Id.*) They assert that "[t]he Second Amended Complaint contains no factual support for this element and does not even contain threadbare allegations that the Defendants intentionally destroyed or spoliated evidence in order to defeat the Plaintiff's ability to prevail." (*Id.* at 4-5.) The Sophia Defendants argue that "[b]ecause the Plaintiff has failed to plead facts to meet the required elements of intentional spoliation, Plaintiff's claim fails as a matter of law." (*Id.* at 5.)

## VI. ANALYSIS

The Court finds that the Sophia Defendants' Motion to Dismiss should be granted because, even assuming the allegations to be true, Plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a)(2). In order to state a claim for intentional spoliation of evidence, Plaintiff's Second Amended Complaint must allege all of the elements for intentional spoliation of evidence, namely:

> (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages.

*Hannah v. Heeter,* 584 S.E.2d 560, 573 (W.Va.2003). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because

12

courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555.) Therefore, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) Plaintiff has failed to do so.

The factual allegations set forth in Plaintiff's Second Amended Complaint are inadequate to state a cause of action for intentional spoliation of evidence. Plaintiff's Second Amended Complaint fails to allege all of the requisite elements of intentional spoliation of evidence, let alone "articulate facts" showing that he has stated a claim entitling him to relief.[10] *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.)

With regard to the third element, Plaintiff's Second Amended Complaint lacks an allegation of and facts supporting the "willful destruction of evidence." *Hannah,* 584 S.E.2d at 573. Plaintiff alleges that by allowing the daily usage of the Sophia Police Department computers, the Sophia Defendants have "permitt[ed] relevant files and data to be *at risk* for being deleted or overwritten." (Sec. Am. Compl. ¶ 92) (emphasis added.)  Plaintiff further alleges that "Defendants maintain that the investigation report and other requested documents . . . are no longer *believed* to exist on the computers." (Sec. Am. Compl. ¶ 95) (emphasis added.)   Plaintiff does not allege that evidence was destroyed, let alone that the destruction was done willfully. Similarly, Plaintiff alleges that "Defendant Peck has *altered* documents since the onset of litigation," not that she destroyed documents. (Sec. Am. Compl. ¶ 97)(emphasis added.)  A handwritten note on a copy of a document does not amount to destruction of evidence, especially when Plaintiff does not dispute that he has a copy of the original without the alteration.  Furthermore, correcting a date on a typed timeline with an ink pen, on the record in open court, does not amount to destruction of

---

10 The Court notes that Plaintiff does allege the first two elements of the tort of intentional spoliation of evidence by asserting that the Sophia Defendants had actual knowledge of this lawsuit within a week of its filing on April 30, 2012. (Sec. Am. Compl. ¶ 88.)

13

evidence. Contrary to what Plaintiff claims, the Sophia Defendants' willful destruction of evidence cannot be inferred from the allegations relative to this conduct.

With regard to the fourth element, Plaintiff's allegation that "[t]he spoliated evidence . . . was vital to Plaintiff's claims in this action and his ability to prevail," (Sec. Am. Compl. ¶ 99), does not suffice because it is merely a threadbare recital of an element. *See, Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555.) Plaintiff does not articulate any facts supporting this allegation. As stated above, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679.

With regard to the fifth element, Plaintiff fails to allege "the intent of [the Sophia Defendants] to defeat [Plaintiff's] ability to prevail in the pending . . . civil action." *Hannah,* 584 S.E.2d at 573. Plaintiff states that "the Sophia Defendants' conduct shows their intention to spoliate evidence." (Pl.'s Resp. at 6.) Although Plaintiff is correct in stating that "intent may be proven by circumstantial evidence," (*Id.*) (citing *Williams*, 2009 WL 1515319 at *4), Plaintiff fails to allege that the Sophia Defendants' intent was to defeat his ability to prevail in this civil action. The court in *Hannah* made it clear that "[t]he gravamen of the tort of intentional spoliation is the *intent to defeat a person's ability to prevail in a civil action.*" *Hannah,* 584 S.E.2d at 573. "Therefore, it must be shown that the evidence was destroyed with the specific intent to defeat a pending or potential lawsuit." (*Id.*) Plaintiff has failed to allege that evidence was destroyed, much less that it was destroyed with the specific intent to defeat this pending lawsuit.

With regard to the sixth element, Plaintiff fails to allege his "inability to prevail in the civil action." *Hannah,* 584 S.E.2d at 573. In his response in opposition, Plaintiff argues that "discovery is necessary to determine what evidence was actually lost through the Sophia Defendants' unlawful conduct and what impact such loss of evidence has on [his] ability to prevail in this

action." (Pl.'s Rep. at 6-7.) In West Virginia, the tort of intentional spoliation of evidence consists of seven elements. *Hannah,* 584 S.E.2d at 573. The sixth element is "the party's inability to prevail in the civil action." (*Id.*) Plaintiff does not even allege this required element in his Second Amended Complaint.

With regard to the final element, Plaintiff's Second Amended Complaint fails to properly allege damages. Although "[o]nce the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation," Plaintiff has not established the first six elements. (*Id.*) His statement that "[he] has suffered damages" is insufficient to state a claim because it is a conclusory statement with no supporting facts. (Sec. Am. Compl. ¶ 100.) Again, statements of bare legal conclusions "are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. Plaintiff's allegations with respect to five of the seven requisite elements of this claim are simply inadequate.

Plaintiff has not properly stated a claim for intentional spoliation because he has failed to allege all of the elements of intentional spoliation of evidence and to articulate facts supporting his allegations. Therefore, the Sophia Defendants' motion to dismiss for failure to state a claim should be granted.

### VII. CONCLUSION

Wherefore, based on the findings herein, the Court does hereby **ORDER** that *Defendants Town of Sophia, Town Council of Sophia, Sophia Police Department, and Tomi Sue Peck's Motion to Dismiss* (Document 95) be **GRANTED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

          ENTER:    February 11, 2013

*[Signature: Irene C. Berger]*

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA